UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DYER J. MARTIN,                )
                               )
         Plaintiff,            )
                               )   1:09-cv-0490-TWP-TAB
     vs.                       )
                               )
MICHAEL J. ASTRUE,             )
Commissioner of the            )
Social Security Administration,)
                               )
         Defendant.            )
                               )

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Dyer J. Martin ("Martin"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), denying Martin's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner.

### I. STATEMENT OF THE CASE

#### A. PROCEDURAL HISTORY

On March 2, 2005, Martin filed an application for SSI, alleging that she became disabled on May 1, 2004, due to symptoms associated with asthma, allergies, and bipolar disorder. The application was denied on June 20, 2005. Martin then filed an application for reconsideration, which was denied on August 12, 2005.

Martin filed a timely written request for a hearing on August 23, 2005. In the Pre-Hearing Memorandum, Martin's counsel contended that she was totally disabled based on paranoid

schizophrenia, bipolar disorder, major depression, and generalized anxiety disorder with agoraphobia, panic attacks, and multiple suicide attempts. On June 8, 2008, Martin appeared with counsel and testified at an administrative hearing in Indianapolis, Indiana. Claimant's mother Darla Ballenger and vocational expert Robert Barber also testified. Post hearing a psychological evaluation with MMPI and intelligence testing was conducted by Dr. Roger Perry. On September 16, 2008, Administrative Law Judge ("ALJ") Albert Velasquez concluded that Martin was not disabled under the Social Security Act.

On February 26, 2009, the Appeals Council affirmed the ALJ's decision, thereby making the denial of benefits a final decision of the Commissioner and subject to judicial review. 20 C.F.R. § 416.1481. Pursuant to 42 U.S.C. § 405(g), Martin filed a civil action with this Court.

### B. MEDICAL HISTORY

Martin's substantiated diagnoses include a depressive disorder, a generalized anxiety disorder, a personality disorder, and polysubstance dependence.[1] Martin's relevant medical history is set forth below.

On May 9, 2004, Martin was transported to the hospital emergency room via ambulance after allegedly ingesting twenty doses of Zoloft because she was "feeling down" and wanted to "make it go away." Two days later, Martin returned to the Community Hospital emergency room complaining of abdominal pain, nausea, and diarrhea. Later that same month, on May 26, 2004, Martin returned to Community Hospital after once again ingesting twenty Zoloft doses because she "felt bad."

---

[1] As the ALJ noted, when Martin filed her application for SSI, she listed asthma, allergies, and bipolar disorder as the conditions limiting her ability to work.

On May 23, 2005, Martin visited Dr. Thomas A. Smith, PhD, for a consultative psychological evaluation. Dr. Smith found that "Ms. Martin appeared sad" and had a "relatively fixed negative self-image." Dr. Smith diagnosed Martin with Major Depressive Disorder, Generalized Anxiety Disorder, and Alcohol Dependence in Remission. In the summer and fall of 2005, Martin had numerous counseling sessions with medical professionals at Midtown Community Mental Health Center.

On May 16, 2006, Martin was treated at the Community Hospital emergency room after she attempted suicide by intentionally overdosing on prescription medication and alcohol. Less than one month later, on June 10, 2006, the Indianapolis Police Department brought Martin back to Community Hospital after she was found screaming in the street. The outburst was likely triggered by a cocaine overdose and alcohol abuse. When Martin arrived at the hospital, she was "belligerent and agitated" and yelled vulgarities throughout the emergency department. Martin repeatedly claimed that someone was trying to hurt and rape her and she reported seeing people in the hospital room not actually there.

A few days later, Martin was transferred to Community North Psychiatric Pavilion for psychiatric treatment. Martin admitted to snorting cocaine daily as well as using morphine and Oxycontin, which she obtained illegally. Her medical chart indicates that Dr. Timothy Kelly suspected Martin of having a dependence on drugs and alcohol, as well as a personality disorder and "substance induced depression and anxiety."

Martin was taken by ambulance to the Wishard Hospital emergency room on October 28, 2006, after police found her lying in the street. She had apparently fallen after having a few drinks at work. The hospital concluded that she was intoxicated and had suffered a closed head injury. A

CT of the head was negative.

In March 2007, Martin was taken to the hospital by paramedics after her family members called an ambulance when she threatened to kill her brother after she had been drinking. Her family suspected she had ingested Vicodin, which she confirmed to the hospital staff. She was "combative" in the emergency room and had to be placed in 4-point restraints. Martin expressed her desire to commit suicide, and was then seen by the Midtown Community Mental Health Center.

On July 18, 2008, Martin underwent a mental status evaluation and an intellectual assessment. Dr. Roger W. Perry, with Connections, Inc., performed the examination. He reported that she "denied any worries with her memory and she gave no evidence during the evaluation of significant deficits in long or short term memory or memory for immediate recall." At this time, Martin denied any history of auditory or visual hallucinations and she did not endorse any symptoms suggestive of paranoid or delusional thoughts.

Dr. Perry found that Martin had "significant deficits in verbal abstract reasoning." Martin struggled to explain standard proverbs (e.g. "You can't judge a book by its cover"), but she did provide reasonable answers for items measuring common sense reasoning. She admitted to a long history of significant drug use. Dr. Perry concluded that she "demonstrated significant intellectual deficits" and "likely has significant difficulty in comprehension" and "difficulty organizing and comprehending what she reads." As the ALJ noted, however, Dr. Perry did not make a diagnosis of mental retardation or borderline intellectual functioning. Dr. Perry asserted that Martin was not competent to manage her own funds. Dr. Perry officially diagnosed Martin with depressive disorder, generalized anxiety disorder, polysubstance disorder, and personality disorder. He also noted that she had some "economic and occupational problems" and problems with her primary support group.

### C.     VOCATIONAL PROFILE

Martin was most recently employed as an exotic dancer at the Silk & Lace Bar in Indianapolis, where she worked for approximately one month in 2004. Prior to that employment, Martin worked for approximately one week in 2001 as a cashier at a Speedway gas station. According to her testimony at the hearing, she had a "severe anxiety breakdown" and passed out behind the register, and was subsequently taken to the hospital.

In 2000, Martin worked for approximately one year as a receptionist at Southeast Neighborhood Development Group of Indianapolis. She quit this job after having a miscarriage. Prior to that, Martin worked for approximately three months making shelves at D & H Acrylic Firm. She believes that she quit this job, but cannot recall the circumstances surrounding her decision. No other employment was documented in the record.

### D.     EDUCATIONAL HISTORY

There is some discrepancy in the record regarding Martin's education. During the hearing, Martin told the ALJ that she had only completed eighth grade. According to her medical chart, she informed Community Hospital in 2006 that she has a 10th grade education and no GED. However, in 2007, she reported to Community that she had completed the 11th grade. In the Disability Report filed with the Social Security Administration, Martin reported that she had completed the 9th grade. In Dr. Thomas Smith's Mental Status Examination report dated May 23, 2005, Martin reported that she quit school because nobody would help her and she had a baby that died.

At the hearing, Martin's mother testified that Martin did try to go back to school at one point. Martin enrolled in night school, but was kicked out for attempting to stab a pregnant classmate with

a pencil. Apparently, Martin was "set off" after the girl "said something to her."

### E. OTHER RELEVANT HISTORY

Martin has three children with three different fathers. Martin's first child is in temporary custody with her mother. Her second child tested positive for cocaine at birth and was subsequently removed from her care by Child Protective Services. Her parental rights are being terminated in regards to that child and Martin's mother is adopting the child. At her hearing, Martin testified that she has custody of her youngest child. However, at this time, Martin did not have supervised visitation with her two oldest children, and only saw them when her mother allowed her to do so.

Two weeks prior to the hearing, Martin had a "breakdown" and was evicted from the home she shared with her boyfriend and youngest daughter. At the time of the hearing, Martin was living with her boyfriend and youngest daughter at her father and stepmother's house. Finally, Martin has been the victim of sexual assault on numerous occasions.

## II. STANDARD OF REVIEW

The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). Stated differently, substantial evidence is "more than a mere scintilla." *Id*. at 401. The Commissioner is responsible for weighing evidence, resolving conflicts, and making independent findings of fact. *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Accordingly, this Court may not reevaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *Id*. Thus, the Court will not make a *de novo* determination of the plaintiff's

entitlement to benefits. Finally, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### III. STANDARD FOR DISABILITY

In order to qualify for disability benefits under the Act, Martin must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The ALJ must consider whether the claimant: (1) is presently engaged in substantial gainful activity; (2) has a medically severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four; after Plaintiff has reached step five, however, the burden shifts to the Commissioner to show that there are jobs available in the economy. *Clifford v. Apfel,* 227 F.3d 863,

868 (7th Cir. 2000).

## IV. THE ALJ'S DETERMINATIONS

Tracking this five-step analysis, the ALJ made the following determinations regarding Martin's claim. As to the first step, the ALJ found that Martin had not been engaged in substantial gainful activity since March 2, 2005, the date of the benefits application. For the second step, the ALJ determined that Martin did have some severe impairments, consisting of a depressive disorder, a generalized anxiety disorder, a personality disorder, and a polysubstance dependence. The ALJ relied on the State agency's assessments in finding that Martin did not have any severe physical impairments.

As to the third step, the ALJ found that although Martin had severe mental impairments, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpart. P, Appendix 1. Highlighting and analyzing numerous items in the record, the ALJ explained why "Paragraph B" and "Paragraph C" criteria were not satisfied for listings 12.04, 12.06, 12.08, and 12.09.

Before moving to the fourth step, the ALJ determined Martin's residual functional capacity ("RFC"). RFC is an individual's ability to perform physical and mental work activities despite limitations. 20 C.F.R. § 416.945(a)(1). In making this determination, the ALJ considered Martin's symptoms, medical records, and testimony at the hearing. The ALJ found that even though Martin had some limitations regarding employment, she had the RFC to "perform work at all exertional levels," albeit with numerous non-exertional limitations. These limitations included avoiding "even moderate exposure to work at unprotected heights, around dangerous moving machinery, around open bodies of water, and around open flames." Therefore, she should be employed in work that

is simple and repetitive in nature with no reading or mathematics. The work should not involve operating a motor vehicle, and should not require more than superficial interaction with the general public, coworkers, or supervisors. In making this determination, the ALJ gave "weight to the medical opinions of Dr. Perry and the psychological consultants with the State agency." The ALJ further recognized, "The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." Finally, the ALJ noted that the claimant and her mother's allegations concerning her impairments and their impact on her ability to work "are not fully credible."

In the fourth step of the analysis, the ALJ found that, given Martin's RFC, she would be unable to perform her past relevant work. It was determined by vocational expert Robert Barber that Martin's only past relevant work was as a receptionist. The ALJ found that such work was sedentary and semi-skilled, and noted in his opinion that with Martin's current restrictions (being limited to tasks that are simple and repetitive and have only superficial contact with the general public), she would be unable to perform that past relevant work.

In the fifth and final step of the evaluation, the ALJ found that while Martin was limited vocationally, she could indeed perform a significant number of jobs in the national economy, and was therefore not disabled under the Social Security Act. Pursuant to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ considered Martin's RFC, age, education, and work experience. The ALJ relied on the vocational expert's assertion that, based on the above factors, Martin would be able to work as a housekeeper or assembler, and that there are over 24,000 of those jobs in the State of Indiana.

After analyzing Martin's claim for disability under the five steps, the ALJ determined that

she was "not disabled" under the Social Security Act because she was capable of making a "successful adjustment to other work that exists in significant numbers in the national economy." The ALJ followed the five steps in making this determination, and his findings are supported by substantial evidence. Accordingly, this Court affirms the ALJ's decision.

## V. MARTIN'S ARGUMENTS ON APPEAL

This Court has examined the parties' briefs and concludes that Martin has essentially raised six issues on appeal:

1) Whether the agency's decision denied Martin the due process of law.

2) Whether it was erroneous that the ALJ failed to summon a medical advisor to testify regarding whether Martin's combined impairments were equivalent to a Listed impairment.

3) Whether the ALJ arbitrarily rejected the treatment and examination evidence.

4) Whether it was erroneous that the ALJ failed to cite or discuss certain listings.

5) Whether the ALJ's credibility determination is contrary to the evidence and should be reversed.

6) Whether the Step Five determination was erroneous.

Each argument is discussed separately below.

### A. DUE PROCESS OF LAW

Martin claims that the ALJ's denial of her claim violated her right to due process because she was not given fair consideration. The Court is not persuaded. Rather, the evidence indicates that Martin simply disagreed with the ALJ's determination. Her claim is not supported by examples of extreme conduct or partiality rising to the level of fundamental unfairness. *See Keith v. Barnhart*, 473 F.3d 782, 787-88 (7th Cir. 2007). Accordingly, Martin's due process argument is rejected as unfounded.

### B. MEDICAL ADVISOR TESTIMONY

Martin claims that it was erroneous for the ALJ not to summon a medical advisor to testify as to whether or not her combined impairments equaled any of the listings. This claim fails for two reasons.

First, the burden is on the claimant to "furnish medial and other evidence that we can use to reach conclusions about your medical impairment(s)." 20 C.F.R. § 416.912(a). Second, contrary to Martin's contentions, the ALJ was not required to summon a medical professional to testify under the circumstances. Martin cites *Boiles v. Barnhart*, 395 F.3d 421 (7th Cir. 2005) for the proposition that ALJ's are required to summon a medical advisor to "testify regarding whether a claimant's impairments are medically equivalent to a Listed impairment." [Dkt. 16 at 24]. Martin's reliance is misplaced; *Boiles* imposes no such requirement. Instead, *Boiles* simply states that an "ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Boiles*, 395 F.2d at 425. As such, an ALJ is only required to recontact medical professionals to testify if "the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that ALJ was not required to recontact treating physician for additional evidence or obtain medical expert testimony); *see also* 20 C.F.R. § 416.927(f)(2)(iii) ("Administrative law judges *may* also ask and consider opinions from medical experts on the nature and severity of your impairment(s).")(emphasis added).

Here, the ALJ did not find it necessary to call in a professional other than the vocational expert, and he acted within his discretion in making a disability determination based on information from the testimony at the hearing and Martin's medical records. Simply stated, the record does not

support Martin's argument that the ALJ inappropriately *played doctor* or that he relied only on his layman's medical opinion.

### C. REJECTION OF EVIDENCE

Martin contends that the ALJ ignored evidence favorable to her and instead relied on the opinions of the agency's non-treating physicians. The Court is not persuaded. Although Martin's claim was denied, it is clear that the ALJ examined evidence favorable to Martin in reaching his determination. In his decision, the ALJ made the determination that Martin did indeed have severe impairments and referenced no fewer than nine examinations, hospitalizations, and emergency room visits. The ALJ is not required to provide a "written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (citation omitted). The decision includes an extensive discussion of the medical evidence presented by Martin. The record simply does not support the view that the ALJ cherry-picked and analyzed only the evidence that reinforced his final decision.

### D. DISCUSSION OF LISTINGS

Just as the ALJ is not required to discuss every scintilla of evidence in the record, he is also not required to refer to every possible listing. The Seventh Circuit has expressly declined to impose such a duty on an ALJ, stating that the failure to refer to a relevant listing does not necessitate reversal and remand. *Id* at 369-370. After all, the claimant bears the burden of showing that her impairments meet a listing, and that her impairments satisfy the various criteria specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Here, as the ALJ noted, Martin cannot point to a single medical opinion substantiating her alleged disability.

### E. CREDIBILITY DETERMINATION

Martin claims that the ALJ's negative credibility determination must be reversed because he ignored or only selectively considered the evidence. In his decision, the ALJ stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record." At the hearing, both Martin and her mother testified, and the ALJ found the testimony to be "not fully credible." A reviewing court affords a credibility finding "considerable deference, and [will] overturn it only if patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2004) (citations and internal quotations omitted).

There is evidence in the record to support the ALJ's credibility determination. For instance, the ALJ cited Dr. Perry's finding that Martin was only mildly limited in her ability to understand, remember, and carry out simple instructions. Moreover, Martin had moderate limitations in her ability to make judgments on simple work-related decisions, interact appropriately with the public, and respond appropriately to usual work situations and to changes in a routine work setting. The ALJ also noted testimony that Martin was not taking medication and had used alcohol the prior weekend. By comparing the hearing testimony with the other evidence in the record, the ALJ found, "While the evidence shows that the claimant's impairments cause more than a minimal adverse impact on her ability to perform some basic work-related activities, it fails to establish that they rise to a disabling level of severity."

Martin primarily relies on *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) for the proposition that the ALJ's decision must be reversed because it was contrary to the evidence.

However, as was previously discussed, the ALJ did consider the relevant evidence in making his determination. *Carradine*, though, is actually very helpful in that it describes the standard for appellate review of disability determinations:

> Appellate review of credibility determinations, especially when made by specialists such as the administrative law judges of the Social Security Administration, is highly limited because the reviewing court lacks direct access to the witnesses . . ., lacks the trier's immersion in the case as a whole, and when reviewing decisions by specialized tribunals also lacks the trier's experience with the type of case under review.

*Id*. at 753.

Given the deference accorded to the ALJ's credibility determinations, coupled with the ALJ's thorough review of evidence in the record, this Court finds that this credibility determination was not erroneous.

### F. STEP FIVE DETERMINATION

Finally, Martin claims that the disability determination at step five was improper because the ALJ's RFC assessment did not include all of her limitations. Based on the above discussion concerning the ALJ's findings, however, this argument is not persuasive. The vocational expert identified roughly 24,000 positions in the State of Indiana that could be performed by someone with Martin's characteristics and RFC. Nothing in the record persuasively suggests that the ALJ did not give full consideration to Martin's documented impairments in determining that she was not disabled.

Further, in it's examination of all steps of determinations, this Court looked at all relevant evidence, not only the evidence that supports the Commissioner's conclusion.

## VI. CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ provided a step-by-step analysis of his consideration of both the objective medical evidence and of Martin's subjective symptoms. This Court was able to "trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). He considered all relevant evidence and fully expressed his reasoning for not giving Martin's claims of disability greater weight. For all of the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated: 09/27/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Thomas E. Kieper**
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov,pearlie.wadlington@usdoj.gov,lin.montigney@usdoj.gov

**Patrick Harold Mulvany**
patrick@mulvanylaw.com,yvette@mulvanylaw.com,meagan@mulvanylaw.com